**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

**AMERICAN ATHEISTS, INC.;**
**BETTY JO FERNAU;**
**CATHERINE SHOSHONE;**
**ROBERT BARRINGER; and**
**KAREN DEMPSEY,**                                         **Plaintiffs,**

**v.**                    **Case No. 4:19-cv-00017-KGB**

**STANLEY JASON RAPERT,**
*in his individual and official capacity,*                    **Defendant.**

### PLAINTIFFS' RESPONSE TO INDIVIDUAL DEFENDANT STANLEY JASON RAPERT'S MOTION TO DISMISS

### I. Introduction

Defendant Stanley Jason Rapert is an Arkansas State Senator, required by law to take the following oath "I, _____, do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of Arkansas, and that I will faithfully discharge the duties of the office of _____, upon which I am now about to enter." AR Const. Art. 19, § 20. He holds himself out to the public as an elected official who will fight for citizens' constitutional rights. Now he asks the Court to believe that (accepting all of the allegations in the Complaint as true) a reasonable Senator would not have known that blocking people from participating in his Senator Jason Rapert Facebook page and Twitter account based on their viewpoints and religious beliefs is unconstitutional.

Senator Rapert, who has sworn to uphold the state and federal constitutions, is deemed to know the basic rights protected by these documents. A vast body of constitutional law and commentary discusses the circumstances under which a public official can and cannot restrict speech and what constitutes the impermissible establishment of religion. A very highly publicized and growing body of law specifically finds that social media accounts can be considered designated public forums and that public officials who use such accounts in conjunction with their work are acting under color of law. *See, e.g., Davison v. Randall*, ___F.3d ____, Case No. 17-2002, 2003 (4th Cir. 2019), *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541 (S.D.N.Y. 2018), *One Wisconsin Now v. Kremer*, 2019 WL 266292 (W.D. Wisc. 2019). Senator Rapert continues to block the Individual Plaintiffs after he has been put on notice by this lawsuit and several others directly on point decided in federal courts.

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The claim will survive if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001). A defense of qualified immunity will be upheld on a motion to dismiss only when the immunity is established on the face of the complaint. *Weaver v. Clarke,* 45 F.3d 1253, 1255 (8th Cir.1995).

### III. Law and Analysis

**A.    Personal Liability for Actions Taken Under Color of Law**

"Personal-capacity suits seek to impose personal liability upon a government officer for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166 (emphasis in original); *see also* 42 U.S.C.A. § 1983. Likewise, the Arkansas Civil Rights Act, ARK. CODE ANN. § 16-123-105, provides a cause of action against an individual who, acting under color of law, deprives the plaintiff of any right secured by the Arkansas Constitution. *Stoner v. Ark. Dep. of Correction*, 983 F.Supp.2d 1074, 1088 (E.D. Ark. 2013). In construing § 16-123-105, courts look to state and federal decisions interpreting 42 U.S.C.A. § 1983. *Id.*

Here, Plaintiffs seek to impose personal liability on Senator Rapert for actions taken under color of state law that deprived them of their federal and state rights to free speech and freedom of religion and to petition the government for redress of grievances. In moving to dismiss himself in his individual capacity, Senator Rapert argues that "it would be illogical to find Defendant was acting under color of state law and then hold him individually liable." Br. in Sup. Of Mot. to Dismiss filed Jan. 14, 2019, p. 2. That the Senator fails to see the logic in permitting a government official to be individually liable for acts he personally engaged in under color of state law is irrelevant. The law allows the Court to do exactly that.

Senator Rapert misstates the holding in *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997), which he cites for the proposition that a defendant cannot be personally liable for acts taken under color of law. In *Montano*, an inmate sued a prison chaplain for allegedly violating his constitutional free exercise rights by excluding him from certain religious activities at the prison. *Id*. at 845. The Eighth Circuit held that the chaplain was not a state actor for purposes of §1983 when he engaged in an "inherently ecclesiastical function" and therefore the inmate failed to state a justiciable cause of action under §1983. *Id*. at 851. The Court noted that the chaplain could have been personally liable under §1983 had he violated the inmate's First Amendment rights when performing non-ecclesiastical tasks

because those acts would have been fairly attributable to the state. *Id*. Thus, *Montano* stands in direct opposition to Senator Rapert's argument. Federal and state statutes and a voluminous body of case law establish that an individual is personally liable for deprivation of constitutional rights committed under color of law. 42 U.S.C.A. § 1983; Ark. Code Ann. § 16-123-105; *Graham*, *supra*; *Davison v. Randall*, ___F.3d ____, Case No. 17-2002, 2003 (4th Cir. 2019); *Stoner, supra*.

## B.    Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir. 1997) (internal citation omitted). A public official seeking to assert qualified immunity bears the burden of proof. *Id*. at 674. The official must show that (1) the facts alleged do not establish a violation of a constitutional right *or* (2) the constitutional right violated was not clearly established at the time of the alleged misconduct. *Id.* at 673. To prevail at this stage of the proceedings, a defendant must prove entitlement to qualified immunity on the face of the complaint. *Stanley v. Finnegan*, 899 F.3d 623 (8th Cir. 2018).

Senator Rapert asserts that "Plaintiffs' main areas of relief are for injunctive relief, which are only cognizable against Defendant in his official capacity." Br. in Sup. Of Mot. to Dismiss filed Jan. 14, 2019, p. 2. The assertion is meritless for two

reasons: (1) Plaintiffs request money damages (Compl. Request for Relief p. 56) and (2) the assertion, for which the Senator cites no authority, is an incorrect statement of law. Section 1983 and § 16-123-105 allow public officials to be sued in their individual capacities for injunctive relief and monetary damages. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), 42 U.S.C.A. § 1983; ARK. CODE ANN. § 16-123-105.

*Davison v. Loudoun Co. Bd. Of Supervisors* illustrates the point. The plaintiff sued the Loudoun County Board of Supervisors, including chair Phyllis Randall in her individual capacity, for blocking him from the chair's social media page. 2017 WL 1929406 (E.D. Va. 2017). Ms. Randall asserted a defense of qualified immunity. The District Court denied immunity in spite of the fact that there were no money damages at issue. "Claims for declaratory and injunctive relief are not affected by qualified immunity." *Id*. at *8. The Court later found that Ms. Randall in her individual capacity was liable for engaging in viewpoint discrimination in violation of the First Amendment when she banned a county resident from posting on the webpage. *Davison v. Loudoun Co. Bd. Of Supervisors*, 267 F.Supp.3d 702 (E.D. Va. 2017). The Fourth Circuit affirmed. *Davison v. Randall*, ___F.3d ____, Case No. 17-2002, 2003 (4th Cir. 2019).

**(1) The Complaint clearly sets forth facts establishing a violation of constitutional rights.**

On the face of the Complaint, Senator Rapert cannot prove that there was no violation of constitutional rights. Accepting all facts in the Complaint as true, the Senator Jason Rapert Facebook page and Twitter account (collectively herein, the "Accounts") are designated public forums operated by Senator Rapert under color of law. The Plaintiffs alleged the following in support of that argument.

Senator Rapert presents the Accounts to the public as ones that he operates in his official capacity. Compl. ¶¶ 34, 63, 66. His Facebook page states: "This page is for communication with constitutents and citizens." Compl. ¶ 34. The Twitter page associated with the account is registered to "Sen. Jason Rapert." and links to Rapert's official profile on the Arkansas State Senate's website. Compl. ¶ 63.

Senator Rapert offers and uses the Accounts as forums for discussion and debate about community events, as well as his policy positions and official acts. Compl. ¶ 38. Therefore, the Accounts are instruments of his Arkansas Senate office, like digital town hall meetings where individual users receive information about Arkansas government and exchange their views on matters of public concern. Compl. ¶¶ 2, 38. On the Accounts, Senator Rapert communicates with his constituents, promotes businesses and events in his district, honors the accomplishments of constituents, informs users about government job openings in

his district, delivers safety messages, and performs other duties intrinsic to his role as a state legislator. Compl. ¶¶ 35, 36, 38, 60, 63.

Because of the way Senator Rapert uses the Accounts, his posts and tweets have become an important source of news and information for his constituents about Arkansas state government, and the comment threads associated with the posts and tweets have become important forums for speech by his constituents. Compl. ¶¶ 38, 62. The Accounts are accessible to the public at large without regard to political affiliation or any other limiting criteria. Compl. ¶¶ 37, 65. The Facebook account has approximately 24,000 likes and a similar number of followers. Compl. ¶ 37. Posts to the "Sen. Jason Rapert" Facebook page regularly generate dozens of comments and shares, some of which generate numerous replies in turn. Compl. ¶ 38. The Senator posts photos on the Accounts that are related to his official duties. Compl. ¶¶ 35, 36, 60, 61, 63. Senator Rapert's staff assists him in maintaining the @jasonrapert account, as he has indicated through the account itself. Compl. ¶ 64.

The only users who cannot follow @jasonrapert are those whom the Senator has blocked. Compl. ¶ 65. The Senator refused to respond to an Arkansas Freedom of Information Act request that his office produce, among other things, lists of users banned or blocked from his official social media accounts. Compl. ¶ 67. He did not claim that the accounts in question were non-governmental and therefore

not within the scope of the statute, but that his Senate office had no such records. Compl. ¶ 67.

The Senator provides facially neutral rules for participating in discussion on his "Sen. Jason Rapert" Facebook page, stating that any user who engages in "bullying, intimidation, personal attacks, uses profanity or attempts to mislead others with false information" will be blocked. Compl. ¶ 68. Despite stating that neutral rules are applied to his social media accounts, Senator Rapert regularly blocks users who have not violated these rules. Compl. ¶ 69. He has stated that he blocks people whom he considers "liberal extremists" and that he maintains a "watch list for blocking." Compl. ¶¶ 70, 72. He also has stated that he blocks people who, in his opinion, engage in "ad hominem attacks" or spread what he considers to be "false information." Compl. ¶¶ 71, 73. However, the Senator has not blocked people who agree with his views, even when they use profanity, disparage others, including the religious beliefs of others, accuse others of crimes, or encourage people to commit criminal acts. Compl. ¶¶ 74, 75, 76, 77.

Senator Rapert blocked or banned each of the Individual Plaintiffs from his Facebook page and/or Twitter account because of their beliefs and the viewpoints they expressed. Compl. ¶¶ 82-140. None of the Individual Plaintiffs engaged in the type of speech, e.g. obscenity, child pornography, and fighting words, that has

been held to be exempt from First Amendment free speech rights. Compl.  ¶¶ 82-140; *see Burnham v. Ianni*, 119 F.3d 668, 674 (1997).

American Atheists, on behalf of the Individual Plaintiffs, sent a demand letter to Senator Rapert requesting that the restrictions he had placed on their ability to interact with his official social media accounts be lifted, but he did not respond to that request and continues to restrict the Individual Plaintiffs' ability to engage in expressive activity by engaging with his official social media accounts. Compl. ¶¶ 139, 140. Having been blocked or banned, the Individual Plaintiffs cannot participate in the public forums used by Senator Rapert's constituents and other members of the public and, thus, are unconstitutionally restricted from exercising their rights to free speech, freedom to petition the government for redress of grievances, and freedom of religion.

Plaintiff American Atheists, Inc. ("American Atheists") is a 501(c)(3) civil rights organization whose members hold numerous sincerely-held philosophies and worldviews, sharing the belief that there is insufficient evidence to support claims which assert the existence of any deity. Compl. ¶¶ 141, 142. This shared belief about a fundamental religious question motivates American Atheists' members to speak out against government advancement of religion in general and any specific religious viewpoint in particular. Compl. ¶ 143. Senator Rapert has blocked members and volunteers of American Atheists who reside in his district and across

Arkansas and, on multiple occasions, singled out American Atheists and its members for opprobrium and derision because of their religious viewpoint. Compl. ¶¶ 144, 145.

These facts and others alleged in the Complaint state claims sufficient to proceed against Senator Rapert in his individual capacity. The Fourth Circuit Court of Appeals and two federal district courts have decided cases directly on point, holding that the interactive portion of a public official's social media account is a designated public forum, that the public official using such account is acting under color of law, and that blocking the plaintiffs' access to an account was unconstitutional. *Davison v. Randall*, ___F.3d ____, Case No. 17-2002, 2003 (4th Cir. 2019), *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541 (S.D.N.Y. 2018), *One Wisconsin Now v. Kremer*, 2019 WL 266292 (W.D. Wisc. 2019). In addition, the Maine District Court denied a motion to dismiss a claim arising from blocking on Maine Governor LePage's Facebook page, finding that the plaintiffs "plausibly stated a claim for violation of their free speech rights under the First Amendment." *Leuthy v. LePage*, 2018 WL 4134628 *15 (D. Me. Aug. 29, 2018).

Paving the way for these decisions, the Supreme Court recognized social media as a "vast democratic forum" similar to traditional public forums such as parks. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737-36 (2017). Social

media platforms like Facebook and Twitter offer "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard" by permitting citizens to "engage with [their elected representatives] in a direct manner." *Id.* at 1737.

Senator Rapert argues that the Plaintiffs have means of communication other than the blocked accounts. However, whether "there are ample alternative modes of communication" available to a speaker is not a relevant consideration unless the speech restrictions in question are *content-neutral*. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984); *see also McCullen v. Coakley*, ___ U.S. ___, 134 S. Ct. 2518, 2529 (2014); *Hill v. Colo.*, 530 U.S. 703, 726 (2000); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Renton v. Playtime Theatres*, 475 U.S. 41, 47 (1986); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647-48 (1981); *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006). "If restrictions on access to a limited public forum are viewpoint discriminatory, the ability of a group to exist outside the forum would not cure the constitutional shortcoming." *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 690 (2010). The restrictions Rapert placed on his social media platforms are content-based restrictions.

The Eighth Circuit, in *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), laid out the applicable standards for traditional public forums, unlimited designated public forums, limited designated public forums, and nonpublic forums. The Court indicated that the availability of ample alternative channels of communication was relevant to the inquiry only in the case of content-neutral time, place, and manner restrictions on speech in traditional public forums. *Id.* at 975-76.

For these reasons, explained at greater length in Plaintiffs' Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction and at the hearing of that matter, Senator Rapert has failed his burden of proof that he did not violate a constitutional right of any Plaintiff. Thus, he cannot establish the first prong of the qualified-immunity test.

**(2) The constitutional rights violated are clearly established.**

Having violated a constitutional right, to sustain a defense of qualified immunity, a defendant has the burden to prove that he neither knew nor should have known that the alleged act was unconstitutional. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). The test is one of objective reasonableness and the inquiry is fact-specific. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). A court looks at the "totality of the circumstances." *Ngo v. Storlie*, 495 F.3d 597, 603 (8th Cir. 2007). Because a motion to dismiss is decided on the face of the complaint, it is uncommon for a defendant to prove a qualified immunity defense at this point. *See,*

*e.g., Skrable v. Stodola*, 2016 WL 154087 (denying a motion to dismiss based on qualified immunity because the facts were "murky and disputed" and defendant failed to prove the defense on the face of the complaint).

The Eighth Circuit takes a "broad view of what constitutes clearly established law for the purposes of a qualified immunity inquiry." *Hayes v. Long*, 72 F.3d 70, 73 (8th Cir. 1995) (internal quotation and citation omitted). "In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look to all available decisional law including decisions of state courts, other circuits and district courts." *Id.* at 74, citing *Norfleet v. Arkansas Dep't. of Human Services,* 989 F.2d 289, 291 (8th Cir.1993); *see also Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir. 1993) (in order for law to be clearly established for qualified immunity purposes, it is only necessary that unlawfulness of official's act be apparent in view of preexisting law). "[T]he salient question is whether the state of the law at the time of an incident provided *fair warning* to the defendants that their alleged conduct was unconstitutional." *Gerlich v. Leath*, 861 F.3d 697, 710 (8th Cir. 2017) (internal quotations and citations omitted, emphasis added).

Decades of public-forum and viewpoint-discrimination jurisprudence have established the unconstitutionality of Senator Rapert's actions. "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc*., 473 U.S. 788, 802 (1985); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Boos v. Berry*, 485 U.S. 312 (1988) (illustrating the impermissibility of viewpoint restrictions in government regulation of speech in public forums); *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 830 (1995) (a "metaphysical" space can be a public forum); *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (audience time during city council meetings constituted a designated public forum); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972); 447 U.S. 455 (1980) (First Amendment prohibits government official from restricting expression because of its message, its ideas, its subject matter, or its content); *Stoner, supra* at 1103 ("the right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established).

Based on that precedent, as discussed herein and in Plaintiffs' Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction, the Fourth Circuit Court of Appeals and two federal district courts have decided cases directly on point within the past year. *Davison v. Randall*, ___F.3d ____,

Case No. 17-2002, 2003 (4th Cir. 2019), *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F.Supp.3d 541 (S.D.N.Y. 2018), *One Wisconsin Now v. Kremer*, 2019 WL 266292 (W.D. Wisc. 2019). Each of these case opinions, as well as the *Leuthy* decision, contains a lengthy discussion of Supreme Court and other precedents establishing that the interactive portion of a public official's social media account is a designated public forum and that blocking access is unconstitutional. "Having opted to create a Twitter account, however, and benefit from its broad, public reach, defendants cannot now divorce themselves from its First Amendment implications and responsibilities as state actors." *One Wisconsin Now, supra* at *10. The unconstitutional nature of viewpoint discrimination in public forums was widely recognized long before these recent cases were decided.

Senator Rapert cites *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) for the proposition that he is entitled to qualified immunity because the matter before the court is one of "first impression in this Circuit." Br. in Supp. Of Mot. to Dismiss, p. 2. However, *Harlow* does not state that to be clearly established and thus defeat a qualified immunity defense, statutory or constitutional rights must have been decided in the federal circuit in which the case was filed. Nor does *Harlow* say that a judicial ruling must arise from the same factual circumstances in order to clearly establish a right. The "clearly established" standard is broader than that.

For example, in *Burnham, supra,* the Eight Circuit held that a reasonable official would have known that the alleged status of a school display case as a nonpublic forum did not mean that plaintiffs' rights to freedom of expression were not clearly established. 119 F.3d 668. There were no "display case" precedents at the time. The Court relied on cases involving uses of other types of nonpublic forums by state actors to decide that the defendants should have known that their acts in removing the plaintiffs' photographic expressions from the display case violated the First Amendment.

*Harlow* explains that the qualified immunity defense reflects an attempt to balance the "rights of citizens" against "the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id*. at 800. Here, Senator Rapert's actions in blocking the Individual Plaintiffs from participation in the public discourse on his Facebook page and Twitter account does not serve the "public interest in encouraging the vigorous exercise of official authority." To the contrary, the blocking serves no public interest at all.

At the hearing on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, counsel introduced the Declaration of Jason Rapert. The Declaration cannot be part of the argument on a Motion to Dismiss, but even if the Court were to consider it, the Declaration does not support Senator Rapert's

position. He stated, "a quick look at the comments and replies on any of my social media profiles shows numerous comments of individuals expressing disagreement with my beliefs." Plf. No. 1 ¶ 14. He offers no explanation as to why the Individual Plaintiffs were blocked or what "public interest" could be served by allowing certain individuals to participate in these forums while blocking others. In fact, he describes a scattershot approach to enforcing his rules. Plf. No. 1 ¶ 15. He states that he "take[s] action against anyone who engages in bullying, intimidation, personal attaches, uses profanity, or attempts to mislead others with false information" (Plf. No. 1 ¶ 14) and then in the next paragraph states that he does not have time to search through each and every comment for those that violate his standards. (Plf. No. 1 ¶ 14). The Senator's standards themselves do not provide adequate protection of constitutional and statutory rights, but the fact that he applies them in a discriminatory fashion makes his conduct even more egregious.

Moreover, *Harlow* did not arise from a motion to dismiss, but of a denial of summary judgment. The parties had engaged in "exhaustive" discovery that the defendant claimed "adduced no direct evidence of his involvement in any wrongful activity." *Id*. at 803. Although the qualified immunity inquiry uses an objective standard, determination of the reasonableness of an official's conduct must occur in the context of the surrounding facts and circumstances. Even in *Harlow*, where the parties had engaged in extensive discovery, the Court declined to render

judgment and remanded to the District Court, which was "more familiar with the record so far developed and . . . better situated to make any such further findings as may be necessary." *Id.* at 820.

It is Senator Rapert's burden to prove that no clearly established rights were violated by his action to block the Individual Plaintiffs and members of the American Atheists, a burden clearly not met at this early stage in the proceedings. In light of the long history of relevant jurisprudence and the recent and highly publicized cases directly on point, a reasonable Senator would know that she or he cannot block individuals from public discourse on official social media accounts based on their viewpoints and/or religious affiliation. The Senator has not proved otherwise. On the face of the Complaint and in light of longstanding and recent jurisprudence, Senator Rapert has had "fair warning" that his actions are unconstitutional.

## IV. Conclusion

For the reasons stated herein and in Plaintiff's Complaint and Motion for Temporary Restraining Order and Preliminary Injunction and Brief in Support, Defendants' Motion to Dismiss as to Stanley Jason Rapert Individually should be denied.

Respectfully submitted,

By:   Philip E. Kaplan
Ark. Bar No. 68026
*pkaplan@williamsanderson.com*
Bonnie Johnson
Ark. Bar No. 2005165
*bjohnson@williamsanderson.com*
Williams & Anderson, PLC
111 Center St.
Little Rock, AR 72201
P: (501) 859-0575
F: (501) 372-6453

*Counsel for Plaintiffs*

Of Counsel:
Geoffrey T. Blackwell
N.J. Bar No. 120332014
Pa. Bar No. 319778
American Atheists, Inc.
718 7th St. NW
Washington, D.C. 20001