IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

AMERICAN ATHEISTS, INC.;
BETTY JO FERNAU;
CATHERINE SHOSHONE;
ROBERT BARRINGER; and
KAREN DEMPSEY,                                                                                PLAINTIFFS

v.                                           Case No. 4:19cv17-KGB

STANLEY JASON RAPERT,
in his individual and official capacity,                                                       DEFENDANT

### REPLY TO PLAINTIFFS' RESPONSE MOTION TO DISMISS AS TO STANLEY JASON RAPERT INDIVIDUALLY

As outlined in Defendant's Motion to Dismiss, the Constitution protects individuals against abridgments of their speech by the government, not against interference attributable to private actions. Thus, the constitutional right of a private individual to express his or her views in a public forum comes into play only when the property in question is owned or controlled by the government and the individual's exclusion from that property is the product of state action. The property in question is Mr. Rapert's personal Facebook page and personal Twitter page. Those elements are plainly not met here.

**I.    Plaintiffs' claims fail to acknowledge that Jason Rapert's social media profiles are private in nature.**

Plaintiffs have repeatedly asserted that Jason Rapert uses his social medial profiles as some form or instrument of governance by using it to announce state related matters. Plaintiffs overlook that all of Jason Rapert's social media profiles belong to Jason Rapert personally. The control Mr. Rapert has over his social media account is completely independent from his public office. The First Amendment does not require private property owners to allow the general public access to their property, nor does it forbid them from excluding particular members of the public that express messages that the property owners personally oppose. *See, e.g., Hudgens v. NLRB*, 424

U.S. 507, 520-21 (1976), (holding that picketers do not have a First Amendment right to enter a privately-owned shopping center to advertise their strike against a company); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 556, 569-70 (1972) (holding that protestors who sought to distribute handbill invitations to a meeting to protest the draft and the Vietnam War had no right to do so at a privately owned and operated shopping center).  His use of personal social media account to make statements about official matters does not alter the fundamentally private, rather than governmental, nature of that authority.

Significantly, Mr. Rapert's social media accounts are not never, and never have been, an official forum to facilitate the private expression of others.  Indeed, Mr. Rapert's social media profiles are used as a platform for his own speech to convey thoughts and opinions to those who follow his social media accounts and anyone who chooses to visit the page.  Mr. Rapert often discusses issues pertaining to religion, sports and other topics unrelated to any business he conducts as an Arkansas State Senator.

Plaintiffs' argument solely focuses on Mr. Rapert's "posting" of views and opinions on his personal social media accounts.  Plaintiffs make the illogical leap that Mr. Rapert's posts make his personal social media accounts an "instrument of governance."   The aim of Plaintiff's argument is amiss.  The legal analysis should be focused on the "nature of the officer's act" at issue.  Therefore, the state action inquiry must focus not on whether other aspects of the Jason Rapert's social media accounts "reflect" state action, but on whether *the act that Plaintiffs are challenging* is fairly attributable to the government.

Here, the act that Plaintiffs argue violates their constitutional rights is Mr. Rapert's *blocking* users from his personal social media accounts.  It is undisputed that Mr. Rapert's decision to block people from his account is an ability he enjoys only in his personal capacity and is entirely independent from his position as a state senator.  Indeed, Mr. Rapert had this ability before

becoming a state senator and will continue to have it after his public service is complete. Plaintiffs' argument improperly shortens the Court's inquiry. Like in a multitude of other cases, courts do not begin and end the state action inquiry simply by noting that the defendant is a government official; the court is to examine the nature of the specific act being challenged. The same is true for Mr. Rapert's decision to block users from his personal social media profiles. It would be illogical and in fact a dangerous invasion of privacy to cast a blanket "state action" label across a public official's personal social media accounts. That Jason Rapert has assumed a public office does not alter the private nature of his social media profiles and his ability to block other users from his social media profile.

### II. Plaintiffs' claims fail to acknowledge that Jason Rapert's social media profiles are not a forum that the State of Arkansas has intentionally opened to facilitate the expression of others

There is no evidence that Jason Rapert uses his social media profiles to open an official state designated public forum. "[The] government 'does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.'" *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015); *Perry v. McDonald*, 280 F.3d 159, 166 (2d Cir. 2001) ("A designated public forum is created by purposeful governmental action—that is, when the government 'intentionally open[s] a nontraditional forum for public discourse.'" (alteration in original)). Indeed, Plaintiffs can only argue that this intent must be inferred as they can point to no direct proof. Their attempt to infer Mr. Rapert's intent do not follow and in fact are controverted by the facts of this case. Mr. Rapert began using social media profiles before becoming a state politician. He accumulated a number of followers before becoming a state senator, and he continues to use his social media profiles to effectively and instantaneously share his views with a wide audience, including followers outside his constituency. As stated above, the First Amendment does not require private property owners

to allow the general public access to their property, nor does it forbid them from excluding particular members of the public that express messages that the property owners personally oppose. *See, e.g.*, *Hudgens*, 424 U.S. at 520-21 (holding that picketers do not have a First Amendment right to enter a privately-owned shopping center to advertise their strike against a company); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 556, 569-70 (1972) (holding that protestors who sought to distribute handbill invitations to a meeting to protest the draft and the Vietnam War had no right to do so at a privately owned and operated shopping center). As such, Mr. Rapert's social media profiles are merely a mechanism through which individuals can express their own views and engage—or decline to engage—with other social media users as they wish. There are no facts to support that Mr. Rapert's accounts are themselves "forums," public or otherwise.

Plaintiffs also attempt to argue that Mr. Rapert unlawfully restricted plaintiffs' access to government information that is generally available to the public, and second, that Mr. Rapert unlawfully restricted Plaintiffs' ability to petition the government for redress of grievances. Their arguments suffer the same fatal flaw, as Mr. Rapert was not engaged in state action when he blocked the individual plaintiffs. Plaintiffs do not and cannot dispute that "the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *Harris v. Quinn*, 134 S. Ct. 2618, 2628 n.4 (2014) ("[T]he First Amendment does not restrict private conduct."). Similarly, Plaintiffs do not and cannot dispute that Jason Rapert's social media accounts belong to and are controlled by Jason Rapert in his personal capacity, not the state government. As such, when Mr. Rapert chooses to block particular individuals from his personal account, he is exercising a feature of a private social media platform that is granted to all users and is entirely independent of his public office.

Plaintiffs' argue that Jason Rapert's decision to use social media has created a 24-hour, year-round digital town hall. This argument does not logically follow. The fact

that Jason Rapert has chosen to have social media profiles, does not reflect an intent on his part to open the account up for interactive responses. The fact that Jason Rapert has chosen to use social media, as opposed to a blog or some other less interactive medium, to discuss subjects he cares about does not mean that he (let alone the state of Arkansas) "intentionally open[ed]" his social media profiles as an official venue "for public discourse" following his inauguration. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015). Instead, that choice reflects the simple fact that social media is a popular form of communication, widely known and easily accessible to the public. Social media has simply provided Mr. Rapert with a ready means of disseminating his own personal views on a number of subjects ever since he created his social media account, and he has continued using it for that same purpose since he took public office. By continuing to use his social media accounts, Mr. Rapert is able to disseminate his personal messages broadly to his followers in and outside the state of Arkansas. That people may choose to reply to his messages from their own accounts hardly shows an intent on the part of the government to create a forum for such discussion. As such, Plaintiffs have failed to show that Jason Rapert's decision to block them from interacting with his personal social media accounts involved an exercise of governmental authority or that Mr. Rapert, individually, violated any of Plaintiffs' constitutional rights.

WHEREFORE, Defendant prays that the Court grant his Motion to Dismiss and enter an order dismissing with prejudice all claims against him individually.

> Respectfully submitted,
>
> */s/ Paul Byrd*
> Paul Byrd, Ark. Bar No. 85020
> Paul Byrd Law Firm, PLLC
> 415 N. McKinley St. Ste. 210
> Little Rock, AR 72205
> (501) 420-3050
> (501) 420-3128 fax

paul@paulbyrdlawfirm.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Paul Byrd, hereby certify that on February 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of the filing to any participants.

*/s/ Paul Byrd*
Paul Byrd