IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

AMERICAN ATHEISTS, INC.;
BETTY JO FERNAU;
CATHERINE SHOSHONE;
ROBERT BARRINGER; and
KAREN DEMPSEY,                                                                         Plaintiffs,

v.                                    Case No. 4:19cv17-KGB

STANLEY JASON RAPERT,
*In his individual and official capacity,*                                              Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

The Defendant, in opposition to the Plaintiffs' Motion for Preliminary Injunction, makes an inventive argument that has no basis whatsoever in the law. Namely, that only executive branch officials are bound by the First Amendment when it comes to speech on social media. Equally inventive is the Defendant's decision to base much of his argument on provably false claims made in a declaration filed with this Court, which he conveniently (given his decision not to appear at the hearing and be subject to cross-examination) labels "uncontroverted testimony," which relies on an unjustified shifting of the burden of proof in this proceeding.

**II. FACTS**

The Defendant maintains multiple Twitter accounts and Facebook pages, each intended to serve a different purpose. He maintains the @RapertSenate Twitter account as his "Campaign Account," the @ChristLawmakers account to promote his National Association of Christian Lawmakers, and @HGM_Evangelism to promote his ministry. *See* Exhibit "A," Fig. 1-3. This matter concerns his @JasonRapert account which, at present, links to his profile page at the official website of the Arkansas Legislature, identifies the Defendant as "AR State Senator," and

bears a header image depicting a gavel on which the words "Arkansas Senate" are printed. *See* Exhibit "A," Fig. 4. On Facebook, the Defendant maintains his own personal profile, a page for his ministry, a page for the National Association of Christian Lawmakers, a page for the American History & Heritage Foundation, and the Facebook page at issue in this litigation, his "Sen. Jason Rapert" Facebook page. *See* Exhibit "A," Fig. 5-9.

Contrary to the Defendant's statements in his Declaration, Plf. 1 at ¶¶ 4, 8, 10, 16, Defendant has held out for years that his @JasonRapert Twitter account and "Sen. Jason Rapert" Facebook page (hereinafter, the "Defendant's Official Social Media Platforms") are a means for his constituents to both contact him and discuss Senate business among themselves, as well as utilizing it as a means to speak on behalf of the residents of his Senate district.

**The Defendant's use of the @Jason Rapert Twitter account**

On September 18, 2015, the Defendant tweeted on behalf of his district's residents, "Constituents seem tired of the EPA. Time for major reform or ending the EPA altogether. @SenTimCotton @JohnBoozman[.]" *See* Exhibit "A," Fig. 10. Plaintiff Betty Jo Fernau was already blocked from the account at that time, Compl. ¶ 96, and so was unable to see that the Defendant was speaking on her behalf, nor was she able to directly respond with her own point of view regarding the EPA.

Plaintiff Betty Jo Fernau was still blocked when, on November 28, 2016, the Defendant tweeted a poll to gauge his constituents' support for a potential bill to change the name of the airport in Little Rock, Arkansas. *See* Exhibit "A," Fig. 11. The following day, he explained, "Constituents asked me & I asked constituents. #Communication101[.]" *See* Exhibit "A," Fig. 12. Later that same day, he further explained that "responding to constituents is a part of the job description." *See* Exhibit "A," Fig. 13, 14.

On Apr. 3, 2017, he tweeted to thank "all [his] constituents for [their] support & feedback during the 91st General Assembly[.]" *See* Exhibit "A," Fig. 15. Plaintiff Betty Jo Fernau, being blocked on both Facebook and Twitter at the time, Compl. ¶¶ 91, 96, was able to provide neither support nor feedback to her state senator using either of those forums.

In the fifteen days since this Court heard arguments on the present motion, the Defendant has regularly tweeted about the official business of the Arkansas Senate, including a change to the state's health insurance exchange, an invitation his constituents and followers to "[c]ome to the #Arkansas State Capitol" to support his bill to prohibit abortions, SB149, an announcement of the introduction of SB149, an explanation of how SB149 differs from existing law, and a tweet to his fellow lawmakers urging them to support SB149. *See* Exhibit "A," Fig. 16-20.

**The Defendant's use of the "Sen. Jason Rapert" Facebook page**

The Defendant uses his "Sen. Jason Rapert" Facebook page in a manner similar to his @JasonRapert Twitter account. The Defendant regularly publishes to the page pieces headlined "State Capitol Week in Review" in which he informs his constituents of recent and upcoming Arkansas Senate business. *See* Exhibit "A," Fig. 21-24. He sometimes signs off on these posts with his official title and Senate committee positions. *See* Exhibit "A," Fig. 23-24.

He regularly signs off on posts with "-Sen. Jason Rapert." For example, on October 28, 2017, he posted the following:

> Congratulations to the Tyler, Henderson and Vann families of Faulkner County for being named Arkansas Century Farms - their families have owned & controlled the same farms now for over 100 years!
>
> - Sen. Jason Rapert

*See* Exhibit "A," Fig. 25. Because Plaintiffs Betty Jo Fernau and Robert Barringer were blocked from the Defendant's "Sen. Jason Rapert" Facebook page, Compl. ¶¶ 91, 124,

...

127, they were unable to join their fellow residents in congratulating their neighbors on their accomplishment.

The Defendant often uses the page to seek feedback from his constituents. On May 18, 2015, he asked his constituents, "What are the top three issues you believe need to be addressed in our community or state at this time by the legislature?" *See* Exhibit "A," Fig. 26. Plaintiff Betty Jo Fernau was already blocked from the Defendant's "Sen. Jason Rapert" Facebook page at that time, Compl. ¶ 91, and so was unable to let her state senator know what her top three issues were.

On January 27, 2018, the Defendant used the page to inform constituents of an upcoming construction project. *See* Exhibit "A," Fig. 27. He did so by posting a photo of a letter addressed to him in his official capacity from the Arkansas State Highway Commission. Id. Many constituents used the post as an opportunity to comment and inform him and their fellow residents of other road safety issues in the region. Id. Plaintiffs Betty Jo Fernau and Robert Dempsey were blocked prior to the post, Compl. ¶¶ 91, 124, 127, and were therefore unable to inform the Defendant and other area residents of similar safety issues they encountered.

The "Videos" tab of the page includes at least 29 videos streamed live from facilities to which Rapert has special access due to his official position, including at least 28 videos from his own Senate office, *see* Exhibit "A," Fig. 28-55, and at least one video from the Arkansas Governor's Office during a bill signing. *See* Exhibit "A," Fig. 56.

### III. LAW AND ARGUMENT

**A.    Plaintiffs are likely to succeed on the merits of their claims.**

    *1.    Defendant uses his "Sen. Jason Rapert" Facebook page and @JasonRapert Twitter account as a government official acting under color of state law.*

        *a.    A legislator may open a public forum and the Defendant viewed it as his duty to do so.*

The Defendant claims that, as a mere part-time legislator, he is not a unit of government and therefore cannot create a public forum. This claim has no legal basis. For support, he grasps fervently at a single straw found in a concurrence to the Fourth Circuit's recent *Davison v. Randall* decision, in which Judge Keenan wonders whether a legislator constitutes a "unit of government." *Davison v. Randall*, No. 17-2002, 2019 U.S. App. LEXIS 406, at *26-27 (4th Cir. Jan. 7, 2019) (Keenan, J., concurring). This question has been asked and answered. A legislator's constituents select that individual to serve as a "political representative[] executing the legislative process" on their behalf. *Coleman v. Miller*, 307 U.S. 433, 470 (1939). A legislative seat is a constitutional creation, passing from office holder to office holder, and "the legislator casts his vote 'as trustee for his constituents, not as a prerogative of personal power.'" *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126 (2011) (*quoting Raines v. Byrd*, 521 U.S. 811, 821 (1997)). The occupant has duties beyond the prototypical act of casting a legislative vote. In the course of meeting their "primary lawmaking responsibilities," lawmakers "perform functions that could be characterized as 'executive' in most contexts," including "communicat[ing] with their constituents." *Bowsher v. Synar*, 478 U.S. 714, 753-54 (1986). The Courts therefore view measures intended to facilitate communication with constituents as "legitimate and *necessary* efforts of legislators." *Buckley v. Valeo*, 424 U.S. 1, 84 n.112 (1976) (per curiam).

Prior to this litigation, the Defendant himself recognized this fact, having once tweeted that "responding to constituents is part of the job description" of a lawmaker. *See* Exhibit "A," Fig. 13. He now disclaims any ability to create the very forums that would allow him to perform a significant portion of duties as an elected representative. This is disingenuous, self-serving, and, more importantly, utterly lacking in legal support.

      b.    *Defendant explicitly intended his "Sen. Jason Rapert" Facebook page and @JasonRapert Twitter account as public forums.*

Each of the courts to address the question of whether a particular social media account constitutes a public forum have considered various factors to reach a determination. The courts have used these "objective factors" to infer the underlying determinative factor: the subjective intent of government officials. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 574 (S.D.N.Y. 2018); *see also Davison*, No. 17-2002, at *26-27; *One Wis. Now v. Kremer*, No. 17-cv-0820, 2019 U.S. Dist. LEXIS 8828, at *27-28 (W.D. Wis. Jan. 18, 2019); *Davison v. Loudoun Cnty. Bd. of Supervisor*s, No. 16-cv-932, 2017 U.S. Dist. LEXIS 71585, at *15-18 (E.D. Va. May 10, 2017). This includes *Hargis v. Bevin*, the sole decision to conclude that a government official's social media platforms were *not* public forums. 298 F. Supp. 3d 1003, 1011-12 (E.D. Ky. 2018).

Before even addressing these objective factors—"hallmarks of a public forum" in the *Davison* court's words, No. 17-2002 at *26—this Court's inquiry is made significantly easier than those faced by the courts cited above because the Defendant stated his intent on numerous occasions. His purpose in maintaining the "Sen. Jason Rapert" Facebook page was (until at least January 4, 2019) to provide a forum for "communication with constituents and citizens." Compl. at ¶ 34. The Defendant tweeted that "responding to constituents is part of the job description," *see* Exhibit "A," Fig. 11, and he has used these forums to poll his constituents, explaining: "Constituents asked me & I asked constituents," *see* Exhibit "A," Fig. 12.

In early December, 2018, when Twitter "'temporarily limited'" his @JasonRapert account due to his remarks attacking Muslim elected officials, the Defendant released a public statement declaring, "[a]s a political leader, I discuss issues that are important to our community, state and nation." Michael Buckner, Sen. Rapert's Twitter account temporarily…, THV11 (Dec. 5, 2018, 8:42 PM), https://www.thv11.com/article/news/local/sen-raperts-twitter-account-

temporarily-limited-after-comments-on-muslim-people/91-621285335. He went on to state, "I will not allow intimidation by anyone or any organization to deter me from pursuing policy positions and public actions *that are within my purview as an elected state senator and public servant.*" Id.

In short, the Defendant, *in his own words*, views maintaining his Official Social Media Platforms as part and parcel of his duty as an elected official to communicate *with*—not just *at*—his constituents. The Defendant intended these platforms to be public forums and designated them as such.

    c.    *Defendant's "Sen. Jason Rapert" Facebook page and @JasonRapert Twitter account bear all the hallmarks of designated public forums.*

In *Davison v. Randall*, the Fourth Circuit identified five facts that were "hallmarks of a public forum" and therefore sufficient to conclude that a Facebook page operated by a government official did constitute such a forum: the official (a) "intentionally opened the public comment section of the [official's] Facebook [p]age for public discourse," (b) invited "ANY. . . citizen" in the official's geographic area to make posts to "the interactive component of the page," (c) invited comments "on ANY issues, request, criticism, complement or just your thoughts," (d) placed no restrictions on the public's access to the page, and (e) was "compatible with expressive activity" because the official sought an "exchange of views" through the Facebook page. No. 17-2002, at *26-27 (internal alterations omitted, emphasis in original).

The court expressly rejected an argument from the defendant government official that the page could not be a public forum because it was private property. *Id.* at *28. In rejecting this argument, the court pointed out that "the Supreme Court and lower courts have held that private property, whether tangible or intangible, constituted a public forum when, for example, the government retained substantial control over the property under regulation or by contract." *Id.* at

*29 (citing *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 547, 555 (1975); *Halleck v. Manhattan Community Access Corp.*, 882 F.3d 300, 306–07 (2d Cir. 2018), cert. granted 139 S. Ct. 360 (2018) (mem.); *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114, 1122 (10th Cir. 2002); *Freedom from Religion Foundation, Inc. v. City of Marshfield, Wis.*, 203 F.3d 487, 494 (7th Cir. 2000)); *see also Marsh v. Alabama*, 326 U.S. 501, 505-06 (1946). Though not binding on this Court, the Honorable Judge Conley, District Judge for the Western District of Wisconsin, recently considered and rejected a substantially identical argument in his recent decision in *One Wisconsin Now v. Kremer*, stating that "the private property claim fails because . . . public forums can be found on public or private property." No. 17-cv-820, at *30 (*citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985); *Davison*, No. 17-2002 at *9).

Even at this early stage, the Plaintiffs have shown that, contrary to Defendant's assertions, the Defendant's Official Social Media Platforms bear all five of the hallmarks identified and found persuasive by the Fourth Circuit Court of Appeals, as well as a number of other, similar objective factors indicating that the Defendant intended them to be public forums.

The Defendant's "Sen. Jason Rapert" Facebook page bears each of the *Davison* hallmarks. First, he maintained the page for the explicit purpose of "communication with constituents and citizens." By doing so, he intentionally opened the page up for public discourse. Second, he identified "constituents and citizens" as the intended participants in the page and, in doing so, went farther than the defendant in *Davison* by opening it not only to his constituents in Arkansas Senate District 35, but to all "citizens." Third, he placed no limits on the subjects which could be discussed on the page, claiming to only exclude commenters "who engage[d] in bullying, intimidation, personal attacks, use[d] profanity or attempt[ed] to mislead others with

false information." Though he retained control over the originating posts, there is no indication that the Defendant policed comments for being off-topic. Fourth, other than the specific individuals he actively excluded, the Defendant placed no restrictions on the public's access to his page. Fifth, and finally, he maintained the page explicitly for expressive activity: "communication" between a lawmaker and his "constituents" and other "citizens."

In addition to bearing each of the *Davison* hallmarks, the page bears the Defendant's official title and he regularly uses it to broadcast live video of him in his Senate office, discussing Senate business. These videos frequently feature the Seal of the Arkansas Senate with the Defendant's name etched beneath it. In response to a comment on one of the videos, the Defendant replied to point out that he was not up for reelection at that time. *See* Exhibit "A," Fig. 39. The video therefore could not have been posted as part of any of his reelection campaigns. Another is captioned, "Sen. Rapert is now Live on Facebook for discussion of the closing of Session. Join us!"  Notably, two of these videos have been broadcast from the Defendant's Arkansas Senate office in the short time since he stated in his sworn Declaration to this Court:

> I do not use any of my social media accounts in an official capacity. They are personal accounts having nothing to do with my official status as a legislator. As one can see from a quick perusal of my social profiles, very little of what is posted has anything to do with the Arkansas legislature.

Plf. 1 at 16.  If the Defendant believes the above statement to be true, he must necessarily be defining the words "official," "personal," and "legislator" in a manner with which Plaintiffs' counsel is unfamiliar.

The @JasonRapert Twitter account likewise bears each of the *Davison* hallmarks. He opened the account up for public discourse, tweeting that "responding to constituents is part of the job description," and using the account to conduct polls of his constituents, explaining, "Constituents asked me & I asked constituents." He sought input from his constituents on

numerous topics and thanked them for providing their "feedback." He did not protect his tweets, instead making them open to all, save those he actively blocked for disagreeing with him. All of these facts demonstrate that the Defendant, through the @JasonRapert Twitter account, sought an exchange of views between his constituents themselves and between him and his constituents.

In addition to the *Davison* hallmarks, the account bears his title, links directly to his profile on the Arkansas Senate website and numerous tweets concern matters directly related to his office. In fact, in the short time since he filed the above sworn Declaration with this Court the Defendant has tweeted at least five times about Senate business, including one in which he "apologize[d] to the people of Arkansas" for how one group of citizens used "our Capitol bldg" to hold a protest.

The Defendant argues that he uses these are private accounts operated for personal reasons, or for reasons associated with his ministry, or for reasons associated with his small business. Though he may also use the accounts for those purposes (and his claim that he does so has not been subjected to cross-examination), he nonetheless intended them for the purpose of communicating with constituents. His own sloppiness in managing his social media presence does not change that fact.

### 2. *Defendant has failed to meet the burden of showing that the exclusion of an individual from a public forum is justified.*

Having established that the Defendant's official social media platforms constitute a public forum and that the Defendant has acted to exclude them from the forum (which the Defendant concedes), the burden shifts to the Defendant to show that the exclusion was justified. *Hill v. Colo.*, 530 U.S. 703, 770 (2000) citing *United States v. Playboy Entm't Group*, 529 U.S. 803, 817 (2000). The Defendant has failed entirely to meet this burden, arguing instead that the Plaintiffs have failed to refute every potential justification. The sole justification offered by the

Defendant, without any substance to support it, is that the Plaintiffs were excluded from the social media platforms "for abusing the privilege of accessing them." Doc. 18 at *1.

Though the Plaintiffs do not bear the burden on this point, they have offered ample evidence to support the allegation that the Defendant engaged in viewpoint discrimination. Compl. at ¶¶ 66-81, 87-96, 115-20, 125-26, 131-36. At the hearing on this motion, the Defendant introduced emails which he claims justify the exclusion of Plaintiff Betty Jo Fernau, claiming that the emails, three in total, were harassing and threatening in nature. The content of those emails show Defendant's contention to be completely without merit.

> 3. *The availability of alternative modes of communication is irrelevant where the government has engaged in viewpoint discrimination.*

The Defendant also argues that Plaintiffs are not likely to succeed on the merits of their claims because they "remain free to contact Defendant through a variety of other means." The Defendant's reliance on this argument is misplaced. Whether "there are ample alternative modes of communication" available to a speaker is a relevant consideration only when the courts are addressing *content-neutral* time, place, and manner restrictions on speech. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984); *see also McCullen v. Coakley*, ___ U.S. ___, 134 S. Ct. 2518, 2529 (2014); *Hill v. Colo.*, 530 U.S. 703, 726 (2000); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Renton v. Playtime Theatres*, 475 U.S. 41, 47 (1986); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647-48 (1981); *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006).

> If restrictions on access to a limited public forum are viewpoint discriminatory, the ability of a group to exist outside the forum *would not cure the constitutional shortcoming*. But when access barriers are viewpoint neutral, our decisions have counted it significant that other available avenues for the group to exercise its First Amendment rights lessen the burden created by those barriers.

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 690 (2010) (emphasis added). The Eighth Circuit, in *Bowman*, laid out the applicable standards for traditional public forums, unlimited designated public forums, limited designated public forums, and nonpublic forums. 444 F.3d at 975-76. Only in the case of content-neutral time, place, and manner restrictions on speech in traditional public forums did the court indicate that the availability of ample alternative channels of communication was at all relevant to the inquiry. *Id.* at 975.

The restrictions Rapert placed on his social media platforms—his "Sen. Jason Rapert" Facebook page, in particular—are, explicitly, content-based restrictions, including "bullying, intimidation, personal attacks, [] profanity or attempt[s] to mislead others with false information." As a consequence, the availability of alternative channels for communication is entirely irrelevant to the inquiry, regardless of which class of public forum his social media platforms constitute.

Plaintiffs contend that these platforms qualify as unlimited designated public forums, since any comment, or reply could be completely unrelated to the original post to which it responds. However, whether the designated public forum is limited or unlimited is a distinction without a difference in the inquiry presently before the Court.

**B.      The Defendant has failed to show that any delay on the part of individual plaintiffs in bringing litigation caused him undue harm.**

The Defendant argues that the Plaintiffs should be denied a preliminary injunction because some among them did not immediately pursue litigation upon first being subjected to invidious viewpoint discrimination by the Defendant. For support, the Defendant points to three cases, none of which support his claim: *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211,

1213 (9th Cir. 1984), *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1057 (7th Cir. 2016), and *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). As the Seventh Circuit Court of Appeals stated in *Jones* (and to which the Defendant cites), when considering a preliminary injunction, "'[l]aches arises when an unwarranted delay in bringing a suit or otherwise pressing a claim *produces prejudice*.'" 842 F.3d at 1060 (quoting *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990)) (emphasis added). The Eighth Circuit Court of Appeals, in a string of cases ignored by the Defendant, has expressed the same rule: "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999); *see also St. Louis Constr. Laborers Welfare Fund v. Park-Mark, Inc.*, 700 F.3d 1130, 1136 (8th Cir. 2012); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 469 (8th Cir. 2011); *Champagne Louis Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 858-59 (8th Cir. 2009). The Eighth Circuit has gone so far as to lay out a three-part test for whether the *defendant* has successfully asserted the affirmative defense of laches. The defendant must show "'(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" *Champagne Louis Roederer*, 569 F.3d at 859 (quoting *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997)).

  The Defendant has made no attempt to show that the decision on the part of some of the individual defendants not to pursue litigation prior to the present matter was inexcusable or prejudiced him in any way, let alone did so unduly. The individual plaintiffs did not sit quietly after the Defendant began silencing them on his Official Social Media Platforms. They sought first to petition him directly to reverse his action. When that proved fruitless, they sought out

others that had been similarly treated and attempted to put pressure on the Defendant to change his practice. And when a national advocacy organization with the resources to pursue litigation offered its assistance, they eagerly responded.

C.  **The failure of the Plaintiffs' prior counsel to timely serve the Defendant has no bearing on the merits of the present motion.**

For reasons unknown to the Plaintiffs in this matter, prior counsel failed to effectuate service of process in a timely manner. Not only did this slight delay in no way prejudice the Defendant, *Hubbard Feeds, Inc.*, 182 F.3d at 602, it was a delay entirely outside the Plaintiffs' control. The inaction on the part of prior counsel precluded the Plaintiffs from taking several procedural steps they otherwise would have taken in the prior filing of this lawsuit, including the filing of a *pro hac vice* motion for Mr. Blackwell, Litigation Counsel for Plaintiff American Atheists, Inc., and the filing of a motion for a preliminary injunction and temporary restraining order against the Defendant. The Plaintiffs have acted in good faith in this matter and should not be sanctioned for the failures of prior counsel.

D.  **Plaintiffs are not seeking to impose any prior restraint on the Defendant through their Motion for Preliminary Injunction.**

The Defendant's practice of utilizing his Official Social Media Platforms for the purpose of singling out his critics, and atheists in particular, for derision and opprobrium violates the Plaintiffs' rights under the Free Exercise and Free Speech clauses of the First Amendment and under the Arkansas Religious Freedom Restoration Act. Although the Plaintiffs intend to fully prosecute their claims on those points in the present litigation, the issue is not appropriate for, and Plaintiffs do not seek, adjudication of those issues in the current motion.

IV.   CONCLUSION

All of the relevant factors favor the granting of an injunction in this case. This Court immediately should enjoin Senator Rapert from restricting Plaintiffs' and other users' ability to

interact with his @jasonrapert Twitter account and "Sen. Jason Rapert" Facebook page based on their political and/or religious viewpoints; enjoin Senator Rapert from using the @jasonrapert Twitter account and "Sen. Jason Rapert" Facebook page to discriminate against users on the basis of their beliefs about religion; and require Senator Rapert to maintain records documenting the basis for any future decision to restrict a Facebook or Twitter user's ability to interact with his @jasonrapert Twitter account and "Sen. Jason Rapert" Facebook page and therein engage in public speech.

Respectfully submitted,

By:   Geoffrey T. Blackwell
*Pro hac vice*
N.J. Bar No. 120332014
Pa. Bar No. 319778
American Atheists, Inc.
718 7th St. NW
Washington, D.C. 20001
Email: *legal@atheists.org*
Phone: (908) 276-7300, ext. 10

Philip E. Kaplan
Ark. Bar No. 68026
*pkaplan@williamsanderson.com*
Bonnie Johnson
Ark. Bar No. 2005165
*bjohnson@williamsanderson.com*
Williams & Anderson, PLC
111 Center St.
Little Rock, AR 72201
P: (501) 859-0575
F: (501) 372-6453

*Counsel for Plaintiffs*