IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

AMERICAN ATHEISTS, INC.;
BETTY JO FERNAU;
CATHERINE SHOSHONE;
ROBERT BARRINGER; and
KAREN DEMPSEY,                                                                      Plaintiffs,

v.                              Case No. 4:19cv17-KGB

STANLEY JASON RAPERT,
*In his individual and official capacity,*                                          Defendant.


PLAINTIFFS' RESPONSE IN OPPOSITION TO
SUPPLEMENTAL MOTION TO DISMISS OF
<u>DEFENDANT, JASON RAPERT, IN HIS INDIVIDUAL CAPACITY</u>

I.   Introduction

Defendant Stanley Jason Rapert, having been given a reprieve by this Court in the form of a final opportunity to supplement his motion to dismiss as to "any claims other than plaintiffs' First Amendment free speech and right to petition claims on the basis of qualified immunity," Dkt. # 35 at 4, elected to take this opportunity to make a number of frivolous arguments that go well beyond the scope of the Court's order.

Rapert argues that he was not properly named in the complaint. This argument is utterly frivolous. Defendant's own brief acknowledges that he was explicitly named in the caption of the complaint "in his individual and official capacity."

Defendant's argument that the statute of limitations bars the claims brought by Betty Fernau and Cathey Shoshone is, likewise, utterly without merit. The Defendant is

*currently* violating their rights by continually censoring them on his official social media platforms. That he *began* violating their rights several years prior to the complaint is immaterial where a violation is ongoing.

Equally groundless is Defendant's argument that American Atheists lacks standing to bring a claim on behalf of its members because resolution of the matter will require the participation of individual members. This is not the case. The factual allegations in the complaint are more than sufficient to support American Atheists' standing on behalf of its members and the remedies sought do not require individual participation.

With regard to the question of whether the Defendant is entitled to qualified immunity, this Court's prior order granting qualified immunity to the extent the Plaintiffs sought damages against him in his individual capacity under Courts 1 and 2 similarly precludes denial of qualified immunity as to Counts 3, 4, and 5 against the Defendant in his individual capacity.

## II. Objection to Statement and Recitation of "Facts"

Plaintiffs object to any recitation by the Defendant of Plaintiffs' facts as set forth in his motion to dismiss and disputes them. Plaintiffs, of course, allege each and every fact in their Complaint. In considering facts, this Court may base its decision on "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts.'" *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### III.   Motion to Dismiss Standards

#### A.   Rule 12(b)(1)

A challenge to whether standing exists is a jurisdictional question and is therefore analyzed under Rule 12(b)(1). *Disability Support Alliance v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018). Where, as here, the moving party makes a facial attack on a court's subject matter jurisdiction, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); see also *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 *8th Cir. 2018); *Durbin v. City of W. Memphis*, No. 3:14-cv-52, 2015 U.S. Dist. LEXIS 41859, *4 (E.D. Ark. Mar. 31, 2015). If the movant presents a factual attack—one that "'challenges the veracity of the facts underpinning subject matter jurisdiction'"—the court may consider matters outside the pleadings. *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 *8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)); see also *Osborn*, 918 F.2d at 729 n.6.

In the present case, the Defendant has raised a facial attack, arguing that the remedy sought will require the individual participation of American Atheists' members. Because this is not the case, this Court may and should deny Defendant's supplemental motion to dismiss challenging American Atheists' standing to bring a

claim on behalf of its members without the need to look beyond the pleadings. Even if the Defendant were raising a factual attack, the facts in the record are sufficient to deny Defendant's supplemental motion.

**B.     Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The claim will survive if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir.2001). A defense of qualified immunity will be upheld on a motion to dismiss only when the immunity is established on the face of the complaint. *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir.1995).

This Court may and should deny Defendant's supplemental motion to dismiss to the extent that motion is premised on either an alleged failure to properly name the Defendant, the applicable statute of limitations, or the erroneous claim that Plaintiffs failed to allege that Defendant acted with malice.

### IV.     Law and Analysis

**A.     Defendant raises arguments beyond the scope of the Court's authorization for supplemental briefing.**

As a preliminary matter, this Court may and should disregard Defendant's arguments in his supplemental brief to the extent those arguments go beyond the scope of the Court's authorization of supplemental briefing. Fed. R. Civ. P. 15 advisory committee's note to 1963 amendment. In this respect, a supplemental brief is akin to a reply brief. The Eighth Circuit has counselled against considering new arguments raised in a reply brief. *Barham v. Reliance Std. Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006). In this context, where the Court has authorized supplemental briefing on a specific point—qualified immunity with regard to Counts 3, 4, and 5 of Plaintiffs' Complaint—arguments beyond the scope stated in the order should be either disregarded by this Court or struck entirely.

Even if the Court, in exercising its discretion, does address the merits of the extraneous arguments raised by Rapert in his supplemental brief, the Court must still deny the motion to dismiss because each of those arguments is without merit and at least one is utterly frivolous.

    **1.     Defendant was properly named in both his official and individual capacity.**

As the Defendant acknowledges in his brief, "the caption of the Complaint identifies the Defendant as 'Stanley Jason Rapert, in his individual and official capacity[.]'" Dkt. # 37 at 4. This is the *exact* language that the Eighth Circuit stated

would "guarantee that the defendant received prompt notice of his or her potential personal liability" and that plaintiffs "should" include in their complaints when they sue a government official in both individual and official capacity. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

Numerous district courts throughout the Eighth Circuit provide a form, approved by the Judicial Conference of the United States, for *pro se* civil rights plaintiffs that provides a means for the plaintiff to indicate whether a government official is sued in her or his official capacity, individual capacity, or both, by checking the appropriate box(es) labeled "Individual capacity" and "Official capacity." "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)," at 2-3, https://www.uscourts.gov/sites/default/files/complaint_for_violation_of_civil_rights_non-prisoner.pdf (last accessed May 11, 2020). Notably, this Court deviates slightly from this practice (and from the express language provided by the Sixth Circuit in *Nix*), instead requiring a *pro se* plaintiff to check one of three boxes labelled "official capacity only," "personal capacity only," and "both official and personal capacity," respectively. See "42 U.S.C. § 1983 Complaint Form," at 5, https://www.are.uscourts.gov/sites/are/files/42usc1983.pdf (last accessed May 11, 2020).

In *Baker v. Chisholm*, the Eighth Circuit considered a case in which the complaint's caption named ten defendants "in their Official Capacities and in their Individual Capacities[,]" but failed to so name two other defendants. 501 F.3d 920, 924

(8th Cir. 2007) (internal quotation marks omitted). Because the complaint contained "only allegations that were, at most, 'cryptic hints[,]'" rather than any "'clear statement' or 'specific pleading' of individual capacity" as to the other two defendants, the court concluded that those defendants were sued only in their official capacity. *Id.*

In the case presently before the Court, as the Defendant acknowledged, the Plaintiffs explicitly stated that the Defendant was being sued "in his individual and official capacity." Dkt. # 1 at 1. The Defendant would have the Court look past this clear and unequivocal statement, arguing that this merely "suggest[s that] Defendant Rapert in [sic] being sued in his personal capacity." Dkt. # 37 at 4. This argument is absurd on its face and only serves to cause delay and waste the time of both this Court and Plaintiffs' counsel.[1] The Court may and should decline to grant the Defendant's motion to dismiss on this ground.

### 2.  The statute of limitations does not bar the claims of Plaintiffs Fernau and Shoshone.

As stated above, the Defendant goes beyond the scope of this Court's request for supplemental briefing when he argues that the claims brought by Plaintiffs Betty Fernau and Cathey Shoshone are barred by the statute of limitations. The factual

---

[1] Regardless of qualified immunity, it should be pointed out to the Defendant that he may yet be individually responsible for some portion of Plaintiffs reasonable attorney fees and costs if he persists in filing frivolous or purely dilatory pleadings. *Hutto v. Finney*, 437 U.S. 678, 700 (1978) ("bad faith" litigation by defendants may justify fee awards against individual capacity defendants); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (1975) (fee shifting appropriate "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." (omission in original)).

allegation in the Complaint that Rapert is *currently* restricting the ability of Fernau and Shoshone to engage in political speech is fatal to Rapert's argument. The continuous violation doctrine precludes the statute of limitations from beginning to run on these claims until the violation ends. Even if the continuous violation doctrine does not apply, Plaintiffs Fernau and Shoshone could not have known that the Defendant's conduct violated their rights until June 19, 2017, less than three years before commencing this lawsuit.

### i.  Rapert's censorship of the Plaintiffs constitutes a continuous violation.

There is no federal statute of limitations on civil rights claims. The courts instead look to state law—specifically, state statutes of limitations governing personal injury claims—to determine the period in which a plaintiff may properly bring a civil rights claim. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Arkansas law places a three-year time limit on such claims. A.C.A. § 16-56-105. However, "[n]ot every plaintiff is deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to condition or policy." *Montin v. Estate of Johnson*, 636 F.3d 409, 415 (2011) (applying the continuous violation doctrine to an Eighth Amendment claim). The continuous violation doctrine operates to toll the statute of limitations "where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights." *Id.* A plaintiff who alleges facts sufficient to show

that she "suffers daily and unconstitutional restrictions" on her liberty "may be akin to a prisoner's Eighth Amendment claim or claims involving repeated enforcement of policies against a plaintiff rather than claims alleging merely ongoing consequences from an older, challenged action."

The Supreme Court has recognized that even de minimus violations of First Amendment rights constitute irreparable injury, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), that social media platforms "can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard," and that government action limiting expressive activity on social medial violates the First Amendment. *Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 1737 (2017). Furthermore, the comment space associated with each social media post on a government-controlled page or account constitutes a separate public forum inviting discourse between a government entity and its constituents, as well as between the constituents themselves. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 233-34 (2nd Cir. 2019); *Davison v. Randall*, 912 F.3d 666, 686 (4th Cir. 2019); *Campbell v. Reisch*, 367 F. Supp. 3d 987, 992 (W.D. Mo. 2019).

In the present case, the facts alleged show that the Defendant's actions have continuously precluded the Plaintiffs from engaging in protected speech up to and after the filing of the Complaint in this matter. Rapert "continues to restrict the Individual Plaintiffs' ability to engage in expressive activity by engaging with his official social media accounts," up to the date of the filing of the Complaint, Dkt. # 1 at

¶ 140, and after. Furthermore, Plaintiffs Fernau and Shoshone would have engaged in protected speech had they not been continuously prevented from doing so. Each alleges that she "feels a moral imperative to oppose any and all government actions that compel her or other individuals to conform to the religious beliefs of others." Dkt. # 1 at ¶¶ 84, 109. Defendant Rapert frequently promotes his Christian nationalist policy efforts through his official social media platforms and expressly demeans atheists. *See* Dkt. # 1 at Figs. 8, 11.

### ii. Plaintiffs lacked sufficient knowledge to know their rights were violated prior to June 19, 2017.

Not only does the continuous violation doctrine preclude the statute of limitations from barring the claims of Fernau and Shoshone, but the statute of limitations on a claim only begins to run when the aggrieved party has knowledge sufficient to notify her that she suffered a violation. *Slaaten v. United States*, 990 F.2d 1038, 1042-43 (8th Cir. 1993) (statute of limitations tolled until plaintiff had knowledge she had suffered a legal injury). Yet the Supreme Court only concluded that governmental restrictions on access to social media platforms violate the First Amendment in *Packingham v. North Carolina*, a decision that was issued on June 19, 2017. 137 S. Ct. at 1730. Prior to *Packingham*, the Eighth Circuit had not indicated that access to social media platforms received First Amendment protection.

Because they could not have known prior to June 19, 2017, that the Defendant's actions constituted a legal injury in the form of a violation of their free speech rights,

the statute of limitations did not begin to run until that date at the earliest. To hold otherwise would demand prescience on the part of citizens as to what their legal rights will later be determined to be, even while government officials are not held liable for their actions until after similar acts have been subject to years of judicial review. Because Plaintiffs Fernau and Shoshone, despite their knowledge of the Defendant's actions, could not have known that those actions constituted a legal injury prior to June 19, 2017, the statute of limitations does not bar their claims.

### 3. American Atheists has standing to bring claims on behalf of its members.

Contrary to Defendant's assertions, American Atheists, Inc., does have standing to bring claims against Rapert on behalf of its members who are blocked from, or whose comments were deleted from, the Defendant's government-controlled social media platforms.

As the Defendant points out, Dkt. # 37 at 23, an advocacy group has the ability to bring suit on behalf of its members where 1) the members themselves would have standing, 2) there is a sufficiently close relationship between the mission of the organization and the interests it seeks to protect on behalf of its members, and 3) resolution of the claims would not require the participation of individual members. *National Federation of Blind of Missouri v. Cross*, 184 F.3d 973, 981 (8th Cir. 1999).

The Defendant does not challenge American Atheists' associational standing on the grounds that either its members themselves would not have standing or that the

claims it raises on behalf of its members are unrelated to its mission. The Defendant would be hard-pressed to make such an argument. Nick Fish, President of American Atheists, stated in an affidavit that, in addition to the named plaintiffs in this matter American Atheists has at least 23 additional members who have been censored by the Defendant on his government-controlled social media platforms and who did not pursue this matter as named plaintiffs. *See* Aff. of NRF at ¶ 6, previously submitted as Exhibit # 17, Dkt. # 13. Furthermore, the claims raised in this matter—that the Defendant unconstitutionally censored atheists with malicious intent and motivated by religious hostility—implicate the core mission of American Atheists to "strive to create an environment where atheism and atheists are accepted as members of our nation's communities and where casual bigotry against our community is seen as abhorrent and unacceptable." Our Vision, American Atheists (last accessed May 13, 2020), https://www.atheists.org/about/our-vision/.

Instead, the Defendant argues solely that resolving the dispute will require the participation of individual members because the claim for nominal and punitive damages "requires the precise knowledge of the injury to each plaintiff or member claimed to be harmed by Defendant Rapert's conduct." Dkt. # 37 at 23.

Setting aside that neither nominal nor punitive damages require calculations of the individualized harms suffered by American Atheists' members, this Court's prior order precludes the Plaintiffs from challenging the application of qualified immunity to the Defendant in his individual capacity. *See* Part III(B), below. As a result,

American Atheists is precluded from obtaining damages from the Defendant in his individual capacity. The remedies American Atheists still seeks against the Defendant in his individual capacity are declaratory and injunctive relief that require no involvement by its individual members.

For these reasons, American Atheists has standing to bring claims on behalf of its members.

**B.    This Court's Order precludes the denial of qualified immunity as to monetary damages for Plaintiffs' federal claims against him in his individual capacity.**

Although the Plaintiffs respectfully disagree with this Court's prior holding that Defendant Rapert is entitled to qualified immunity as to their free speech and right to petition claims, this Court's prior decision that "[n]o binding precedent notified [defendant government official] that selectively deleting citizens' posts from the interactive part of a Facebook page that invited public commentary clearly violated the First Amendment," *American Atheists*, 2019 U.S. Dist. Lexis 230493, at *121, (internal quotation marks omitted, alterations in original), nonetheless precludes the denial of qualified immunity to Rapert as to the Plaintiffs' federal free exercise and equal protection claims against him for damages.

This Court's prior decision regarding qualified immunity turned on the question of whether it was clearly established that Rapert's social media platforms were government controlled and that his actions with regard to those platforms were therefore subject to constitutional requirements. *Id.* at *119-22. This Court answered

that question in the negative. *Id.* at *122. Denying the Defendant qualified immunity as to Plaintiffs' free exercise, equal protection, and state RFRA claims would necessarily entail a contrary conclusion.

For this reason, the Plaintiffs do not contest, at this time, the grant of qualified immunity to Defendant Rapert as to damages sought in connection with the federal claims brought against him in his individual capacity.

### C.     Plaintiffs did plead that Defendant Rapert acted with malice.

The Plaintiffs must take this opportunity to contest Rapert's inaccurate claim that they "have not pled that Senator Rapert acted maliciously when he blocked them from his social media accounts." Dkt. # 37 at 25. On the contrary, in no less than nine instances in their Complaint, the Plaintiffs alleged that the Defendant acted with malicious intent when he censored them on his government-controlled social media platforms. Dkt. # 1 at ¶¶ 80, 81, 162, 177, 187, 192, 193, 195, 201. Although the Court has already concluded that the rights Rapert violated were not yet clearly established, it cannot be claimed that the Defendant is entitled to immunity from damages under Arkansas state law because the Plaintiffs did not plead that he acted with malice when he did violate those rights.

### V.     Conclusion

For the foregoing reasons, this Court may and should deny the Supplemental Motion to Dismiss of Defendant, Jason Rapert, in his Individual Capacity except with

regard to qualified immunity for Plaintiffs' claims against Defendant in his individual capacity seeking monetary damages.

                Respectfully submitted,

By:  /s/ Geoffrey T. Blackwell
    Geoffrey T. Blackwell
    Pro hac vice
    N. J. Bar No. 120332014
    Pa. Bar No. 319778
    American Atheists, Inc.
    718 7th St. NW
    Washington, D.C. 20001
    Email: legal@atheists.org
    Phone: (908) 276-7300, ext. 310

    /s/ Philip E. Kaplan
    Philip E. Kaplan
    Ark. Bar No. 68026
    pkaplan@williamsanderson.com
    Bonnie Johnson
    Ark. Bar No. 2005165
    bjohnson@williamsanderson.com
    Williams & Anderson, PLC
    111 Center St.
    Little Rock, AR 72201
    P: (501) 859-0575
    F: (501) 372-6453

    *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record:

Dylan L. Jacobs
Assistant Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
dylan.jacobs@arkansasag.gov

Paul Byrd
Paul Byrd Law Firm, PLLC
415 N. McKinley St. Ste. 210
Little Rock, AR 72205
paul@paulbyrdlawfirm.com

/s/ Geoffrey T. Blackwell