THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| AMERICAN ATHEISTS, INC., <br> BETTY JO FERNAU, <br> CATHERINE SHOSHONE, <br> ROBERT BARRINGER, and <br> KAREN DEMPSEY | | **PLAINTIFFS** |
| v. | Case No. 4:19-cv-00017-KGB | |
| STANLEY JASON RAPERT, In His <br> Individual and Official Capacity | | **DEFENDANT** |

## ORDER

Before the Court is the supplemental motion to dismiss filed by defendant Stanley Jason Rapert, in his individual capacity (Dkt No. 37). For the reasons below, the Court grants in part and denies in part the supplemental motion to dismiss.

I.  **Factual And Procedural History**

Plaintiffs American Atheists, Inc. ("American Atheists"), Betty Jo Fernau, Catherine Shoshone, Robert Barringer, and Karen Dempsey (collectively, "plaintiffs") originally filed a complaint against defendant Stanley Jason Rapert, in his individual and official capacity, on October 2, 2018, in a case styled *American Atheists, Inc. v. Rapert*, No. 4:18-CV-00729-KGB (E.D. Ark. Jan. 4, 2019). On January 3, 2019, plaintiffs filed a notice of voluntary dismissal, and the Court dismissed the case, without prejudice, on January 4, 2019. Plaintiffs then commenced this action on January 8, 2019 (Dkt. No. 1-2).

State Senator Rapert is an Arkansas State Senator who, since 2011, has represented Arkansas State Senate District 35, which includes portions of Faulkner County and Perry County, Arkansas. Plaintiffs' complaint sets forth five causes of action related to State Senator Rapert's alleged censoring and blocking of plaintiffs on his social-media accounts. Specifically, plaintiffs

allege violations of their First Amendment right to freedom of speech (Count 1), right to petition the Government for a redress of grievances (Count 2), and right to the free exercise of religion (Count 3),[1] their Fourteenth Amendment right to the equal protection of the laws (Count 4), and their rights under the Arkansas Religious Freedom Restoration Act ("ARFRA"), Ark. Code Ann. § 16-123-404 (Count 5).  State Senator Rapert is sued in his individual and official capacity.

On January 9, 2019, plaintiffs filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 5).  On January 14, 2019, State Senator Rapert filed a motion to dismiss the claims against him in his individual capacity (Dkt. No. 11).  State Senator Rapert filed an answer in his official capacity on January 30, 2019 (Dkt. No. 21).  On September 30, 2019, the Court denied plaintiffs' motion for a temporary restraining order and a preliminary injunction (Dkt. No. 27).  The Court also ruled on State Senator Rapert's motion to dismiss, holding as follows:

> The Court denies plaintiffs' motion for temporary restraining order and preliminary injunction (Dkt. No. 5).  The Court denies State Senator Rapert's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss filed in his personal capacity with respect to whether plaintiffs state claims upon which relief can be granted (Dkt. No. 11).  The Court grants State Senator Rapert qualified immunity on plaintiffs' First Amendment free speech and right to petition claims to the extent those claims seek monetary damages against State Senator Rapert in his personal capacity (Dkt. No. 11).  The Court directs State Senator Rapert to supplement his motion to the extent he seeks the Court's consideration on the issue of qualified immunity with respect to any but plaintiffs' First Amendment free speech and right to petition claims (Dkt. No. 11).

(*Id.*, at 80–81).

On November 8, 2019, plaintiffs filed a motion for entry of default as to State Senator Rapert in his individual capacity (Dkt. No. 29).  On April 23, 2020, the Court determined that, based on the parties' representations in their briefs, State Senator Rapert had adopted, word-for-word, his official-capacity answer as his answer to plaintiffs' claims against him in his individual

---

[1] Plaintiffs additionally allege violations of analogous state constitutional provisions.

capacity and denied as moot the motion for entry of default as to State Senator Rapert in his individual capacity (Dkt. No. 35). The Court further ordered that:

> if State Senator Rapert intends to move to dismiss any claims other than plaintiffs' First Amendment free speech and right to petition claims on the basis of qualified immunity, he must do so within 14 days from the entry of this Order, with the understanding that State Senator Rapert may file for summary judgment on the issue of qualified immunity at a later date consistent with the terms of this Order.

(*Id.*, at 4).

On May 7, 2020, State Senator Rapert filed a supplemental motion to dismiss, seeking qualified immunity on plaintiffs' remaining claims against him in his individual capacity (Dkt. No. 37). State Senator Rapert also contends that plaintiffs failed to name him in his individual capacity, that Ms. Fernau and Ms. Shoshone's claims against him are time-barred, and that American Atheists lacks standing to challenge his alleged censoring and blocking of the individual plaintiffs' social-media accounts (*Id.*).[2] Plaintiffs filed a response in opposition to the supplemental motion to dismiss on May 15, 2020 (Dkt. No. 38).

On May 21, 2020, State Senator Rapert filed a motion for leave to file a reply in support of his supplemental motion to dismiss (Dkt. No. 39) and attached his proposed reply brief to his motion (Dkt. No. 39-1). For good cause shown, the Court grants the motion for leave to file a

---

[2] In their response brief, plaintiffs contend that "this Court may and should disregard [d]efendant's arguments in his supplemental brief to the extent those arguments go beyond the scope of the Court's authorization of supplemental briefing." (Dkt. No. 38, at 5). In his proposed reply brief, State Senator Rapert's counsel represents that he understood the Court's April 23, 2020, Order "to permit the filing of a motion to dismiss raising any argument other than the qualified immunity for Claims 1 and 2 which had previously been granted." (Dkt. No. 39-1, at 1 (citing Dkt. No. 27, at 80)). By its Orders dated September 30, 2019, and April 23, 2020, the Court intended to allow State Senator Rapert to seek qualified immunity on plaintiffs' Claims 3, 4, and 5, not to seek dismissal on grounds other than qualified immunity. Nonetheless, because these issues have been fully briefed, and because State Senator Rapert challenges the Court's subject-matter jurisdiction over American Atheists' claims against him, the Court will address each issue raised in State Senator Rapert's supplemental motion to dismiss on its merits.

reply and directs State Senator Rapert to file his reply brief within 14 days from the entry of this Order. The Court has considered State Senator Rapert's proposed reply brief in ruling on his supplemental motion to dismiss.

## II. Governing Law

### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject-matter jurisdiction over the case. *See Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008). Because standing is a jurisdictional question, a motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1). *See Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018). Here, plaintiffs, as the parties seeking to establish federal jurisdiction, bear the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the district court must distinguish between a "facial attack" and a "factual attack" on jurisdiction. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). Where, as here, a party brings a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). In a factual attack, in contrast, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (citations omitted).

**B.     Rule 12(b)(6) Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party, here, plaintiffs. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).

In short, "[a] complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### III. Discussion

Based on the Court's September 30, 2019, Order, State Senator Rapert is entitled to qualified immunity on all of plaintiffs' claims, and the Court dismisses plaintiffs' claims for monetary damages against State Senator Rapert in his individual capacity. However, the Court rejects the other arguments advanced by State Senator Rapert in his supplemental motion to dismiss.

#### A. State Senator Rapert Has Been Sued In His Individual Capacity

State officials may be sued under 42 U.S.C. § 1983 in either their "official" capacity, their "individual" or "personal" capacity, or both. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). "Suits against officials in their individual capacity 'seek to impose personal liability upon a government official for actions he takes under color of state law.'" *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Graham*, 473 U.S. at 165 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). In *Graham*, the United States Supreme Court explained that, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

6

It is well-settled law that "[t]he Eleventh Amendment does not prevent a plaintiff from seeking damages from a state official if she sues the official in his personal capacity." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).  However, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (quoting *Johnson*, 172 F.3d at 535); *see also Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (explaining that, "if a complaint is silent, or only hints at the capacity in which a state officer is sued for monetary damages, the complaint should be interpreted as an official-capacity claim" (citing *Egerdahl*, 72 F.3d at 619)).  Courts "strictly enforce this pleading requirement because '[t]he Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees.'" *Murphy*, 127 F.3d at 755 (quoting *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)).

The United States Court of Appeals for the Eighth Circuit has cautioned civil rights litigants to "clearly indicate both the parties being sued and their capacity in the caption" to the complaint.  *Jackson v. Crews*, 873 F.2d 1105, 1107 (8th Cir. 1989); *see also Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n.3 (8th Cir. 1984) ("If plaintiff wishes to sue defendants in both capacities, the following language would suffice: Plaintiff sues each and all defendants in both their individual and official capacities." (citation omitted)).  Here, the caption of plaintiffs' complaint names State Senator Rapert "*in his individual and official capacity*."  (Dkt. No. 1-2, at 1).  This language is more than a "cryptic hint," *Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (quoting *Egerdahl*, 72 F.3d at 620), and was sufficient to put State Senator Rapert on notice

7

of his potential individual liability. What's more, State Senator Rapert has twice now invoked the defense of qualified immunity, which is available only in individual-capacity suits, and he has adopted, word-for-word, his official-capacity answer as his answer to plaintiffs' claims against him in his individual capacity.

State Senator Rapert argues that plaintiffs failed to sue him in his individual capacity because, although they identified him as being sued in his individual capacity in the caption of the complaint, they did not do so in the actual text of the complaint (Dkt. No. 37, at 3–7). The Eighth Circuit has already rejected such an argument. *See Bird v. Jefferson Cty. Sheriff's Dep't*, 363 F. App'x 425, 426 (8th Cir. 2010) ("Because the complaint expressly stated that Bird was suing Crews and Groat "Individually" and because Bird's opposition to Crews and Groat's summary judgment motion left no doubt that Bird intended to sue Crews and Groat in their individual capacities, it was error for the court to conclude that Bird sued Crews and Groat in their official capacities only."); *see also White v. Jackson*, No. 4:14CV1490 HEA, 2015 WL 1189963, at *2 n.2 (E.D. Mo. Mar. 16, 2015) (finding that civil rights plaintiff's indication in caption of second amended complaint that defendants were being sued in their individual and official capacities "was clearly sufficient under Eighth Circuit law to give them proper notice" (citing *Jackson*, 873 F.2d at 1107); *Barber v. Jackson Cty.*, No. 05-0818-CV-W-REL, 2005 WL 8159077, at *1 (W.D. Mo. Dec. 5, 2005) (finding that "plaintiff's explicit language in the caption of the complaint that defendants are being sued in both their official and individual capacities is sufficient to provide defendants with notice of their potential liability"); *Cornelious v. Brubaker*, No. 01-CV-1254 (MGD/JGL), at *5 (D. Minn. June 25, 2003) ("[T]he language 'Jason Brubaker in his individual capacity' is asserted in the caption. The Court concludes that the caption in this instance gives ample notice to the defendant that he is being sued in his individual capacity.").

State Senator Rapert's reliance on the Eighth Circuit's decisions in *Nix v. Norman*, *Egerdahl v. Hibbing Community College*, and *Murphy v. Arkansas* is inapposite, as none of those cases involved a civil rights plaintiff who identified a defendant as being sued in his individual capacity in the caption of the complaint. A more apt analogy to this case is *Baker v. Chisom*. There, the caption of plaintiff's first complaint named ten defendants "in their Official Capacities and in their Individual Capacities," but was silent as to the capacities in which two other defendants were named. *Baker*, 501 F.3d at 924. Further, "[t]he body of the complaint contained no 'clear statement' or 'specific pleading' of individual capacity, only allegations that were, at most, 'cryptic hints.'" *Id.* On this basis, the Eighth Circuit agreed with the district court that plaintiff's complaint did not include the requisite clear statement that those two other defendants were being sued in their individual capacities. *See id.* Here, in contrast, plaintiffs' complaint is *not* silent about the capacity in which they are suing State Senator Rapert, as the caption of plaintiffs' complaint names State Senator Rapert "*in his individual and official capacity*." (Dkt. No. 1-2, at 1).

State Senator Rapert's reliance on *Krych v. Hvass*, 83 Fed. App'x 854, 855 (8th Cir. 2003), *Reece v. Williams*, No. 1:19-CV-01042-SOH (W.D. Ark. Feb. 24, 2020), *Solis v. Jones-Foster*, No. 4:19-CV-04025-SOH (W.D. Ark. June 24, 2019), and *Phillips v. Singleton*, 4:15-CV-04051-BAB (W.D. Ark. Feb. 26, 2016), is also misplaced, as those cases involved a civil rights plaintiff who listed a defendant in the caption of the complaint but did not include any allegations against that defendant in the actual text of that complaint.

In sum, the Court finds that plaintiffs' complaint includes the requisite clear statement that State Senator Rapert is being sued in his individual capacity. Therefore, State Senator Rapert's supplemental motion to dismiss on the ground that the complaint does not expressly state that he is being sued in his individual capacity is denied.

### B. State Senator Rapert Is Entitled To Qualified Immunity On Plaintiffs' Remaining Claims Against Him In His Individual Capacity

State Senator Rapert maintains that, because the Court has already found that he is entitled to qualified immunity on plaintiffs' free-speech and right-to-petition claims, he is also entitled to qualified immunity on plaintiffs' other claims, at least to the extent that plaintiffs seek monetary damages against him in his individual capacity (Dkt. No. 37, at 7–13). For their part, plaintiffs, while expressing their disagreement with the Court's prior ruling, concede that, based on that holding, State Senator Rapert is entitled to qualified immunity on their free-exercise, equal-protection, and state-law claims (Dkt. No. 38, at 13–14). Accordingly, for these reasons and based on the reasoning previously articulated by the Court on the issue of qualified immunity as applied to State Senator Rapert, the Court finds that State Senator Rapert is entitled to qualified immunity on plaintiffs' free-exercise, equal-protection, and state-law claims for monetary damages against State Senator Rapert in his individual capacity. Plaintiffs' claims for monetary damages against State Senator Rapert in his individual capacity are dismissed based on qualified immunity.

### C. Ms. Fernau And Ms. Shoshone's Claims Are Not Time-Barred

The limitations period for a § 1983 action is governed by the statute of limitations for personal-injury actions in the state in which the claim accrues. *See Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) (per curiam) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). The Eighth Circuit has observed that, in Arkansas, the general personal-injury statute of limitations is three years and that, therefore, § 1983 claims in Arkansas have a three-year statute of limitations. *See Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *Morton v. City of Little Rock*, 934 F.2d 180, 183 (8th Cir. 1991); *Lyons v. Goodson*, 787 F.2d 411, 412 (8th Cir. 1986).[3]

---

[3] This three-year statute of limitations also applies to plaintiffs' claims for declaratory relief. *See Roberts v. Unimin Corp.*, No. 1:15CV00071 JLH, 2015 WL 8731632, at *9 (E.D. Ark. Dec.

Although courts look to state law for the length of the limitations period, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "The general rule is that a claim accrues at the time of the plaintiff's injury." *Osborn*, 918 F.2d at 731 (citing *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987)).

Federal Rule of Civil Procedure 8(c) requires a defendant to plead a statute-of-limitations defense (and any other affirmative defense) in his answer to the complaint. Here, State Senator Rapert did not raise the Arkansas three-year statute of limitations as an affirmative defense in his answer to plaintiffs' complaint. However, the Eighth Circuit has explained that, while a failure to plead a statute-of-limitations defense would normally result in the waiver of that defense, "when it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation and internal quotation marks omitted); *see also First Pyramid Life Ins. Co. of Am. v. Stoltz*, 843 S.W.2d 842, 844 (1992) ("[O]nce it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled.").

Plaintiffs' complaint alleges that State Senator Rapert banned Ms. Fernau from his Facebook and Twitter accounts in May of 2014 (Dkt. No. 1-2, ¶¶ 87–96). Plaintiffs' complaint

---

11, 2015) (explaining that, because a declaratory judgment is a "procedural device" through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists, and not a separate, substantive claim for relief, no general statute of limitations exists for declaratory-judgment actions, "so courts look to the substantive claim underlying the declaratory cause of action and apply the statute of limitations that governs the substantive claim" (citing *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991), and *In re Downingtown Indus. & Agric. Sch.*, 172 B.R. 813, 823 (Bankr. E.D. Pa. 1994))).

further alleges that State Senator Rapert banned Ms. Shoshone from his Facebook page in May of 2014 and his Twitter account in February of 2015 (*Id.*, ¶¶ 112, 120).  Plaintiffs originally brought suit against State Senator Rapert on October 2, 2018.  That action was non-suited on January 4, 2019.  Plaintiffs then commenced this action on January 8, 2019.

The Eighth Circuit has ruled that Arkansas' one-year savings statute, Ark. Code Ann. § 16-56-126, which provides that a plaintiff who files a timely action and then suffers a non-suit may commence a new action within one year, is applicable to § 1983 claims, but only causes of action pleaded in the non-suited action are tolled by the savings statute.  *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001); *Whittle v. Wiseman*, 683 F.2d 1128, 1129 (8th Cir. 1982).  Plaintiffs initially filed this action over four years after Ms. Fernau was banned from State Senator Rapert's Facebook and Twitter accounts and over three-and-a-half years after Ms. Shoshone was banned from State Senator Rapert's Twitter account.  On this basis, State Senator Rapert contends that Ms. Fernau and Ms. Shoshone's claims against him are time-barred by Arkansas' three-year statute of limitations (Dkt. No. 37, at 14–16).  In response, plaintiffs maintain that State Senator Rapert's alleged censoring and blocking of them on his social-media accounts is a "continuing violation" of their constitutional rights and thus no statutory bar applies.  The Court agrees with plaintiffs.

The Eighth Circuit has explained that:

> Not every plaintiff is deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to condition or policy. . . .  This is particularly true where it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth Amendment claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme.

*Montin v. Estate of Johnson*, 636 F.3d 409, 415 (8th Cir. 2011).

Ms. Fernau and Ms. Shoshone's claims against State Senator Rapert would be barred by Arkansas' three-year statute of limitations only if the alleged violations of their constitutional rights *ceased* more than three years before plaintiffs initially filed suit against State Senator Rapert. Plaintiffs, however, allege that State Senator Rapert *continues* to violate their First and Fourteenth Amendment rights. Ms. Fernau and Ms. Shoshone's claims are, therefore, not time-barred.

The Eighth Circuit's reasoning in *Montin* is instructive. In *Montin*, the Eighth Circuit found a continuing violation where a civilly committed sex offender alleged that he was "suffer[ing] daily and unconstitutional restrictions of his liberty of movement." *Id.* at 416. But the Eighth Circuit also indicated that it would have rejected the detainee's continuing-violation theory had his complaint related solely to the creation of the security policy that called for the restrictions on his movement. *See id.* at 415 (citing *High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir. 2000) (per curiam)). Here, plaintiffs' complaint does not relate solely to State Senator Rapert blocking Ms. Fernau and Ms. Shoshone on his social-media accounts in 2014 and 2015. Rather, like the detainee in *Montin*, plaintiffs allege daily and unconstitutional restrictions on their First and Fourteenth Amendment rights. Plaintiffs allege, for example, that State Senator Rapert "continues to restrict the Individual Plaintiffs' ability to engage in expressive activity by engaging with his official social media accounts." (Dkt. No. 1-2, ¶ 140). While blocked and banned from State Senator Rapert's Twitter account and Facebook page, plaintiffs are denied access to the interactive space following each tweet and Facebook post by State Senator Rapert in which other users may directly interact with the content of the tweets and posts, respectively. Thus, each day that plaintiffs are blocked from State Senator Rapert's social-media accounts, they are subjected to continuing and accumulating harm. *Cf. Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158,

13

1168 (4th Cir. 1991) (finding it "doubtful that an ordinance facially offensive to the First Amendment can be insulated from challenge by a statutory limitations period").

State Senator Rapert's reliance on *Delaware State College v. Ricks*, 449 U.S. 250 (1980), and *Humphrey v. Eureka Gardens Public Facility Board*, 891 F.3d 1079 (8th Cir. 2018), is misplaced. In *Ricks*, a college professor filed a Title VII complaint alleging that he had been denied academic tenure because of his national origin. *See* 449 U.S. at 252. The college notified the professor that the tenure committee had voted to deny him tenure but did not terminate his employment until a year later. *See id.* at 252–53. The Court found that the professor's complaint was time-barred, reasoning that the limitations periods commenced to run when the tenure decision was made and the professor was notified, not when he was actually terminated. *See id.* at 257–58. According to the Supreme Court, the professor's termination of employment at the college was not a continuing violation of Title VII, but was instead "a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257–58. In the Supreme Court's opinion:

> the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [the professor]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id.* at 258.

In *Humphrey*, the Eureka Gardens Public Facility Board constructed a grinder sewer system in the Eureka Gardens community, located near the City of North Little Rock, Arkansas. *See* 891 F.3d at 1081. Two African-American homeowners filed suit, alleging that the decision to install grinder sewer systems instead of gravity sewer systems at their residences violated their constitutional rights to procedural due process, substantive due process, and equal protection. *See id.* Defendants filed a motion to dismiss the complaint as time-barred, arguing that Arkansas' three-year statute of limitations for personal-injury actions began to run when the homeowners

14

were notified of the allegedly discriminatory decision to install the grinder sewer systems in their homes instead of gravity systems and that the homeowners' ongoing obligation to power and maintain their grinder pumps was not a continuing constitutional violation. *See id.* The Eighth Circuit agreed, reasoning that the homeowners' claims accrued "when they were notified of the allegedly discriminatory decision to install the grinder systems instead of gravity systems at their residences," and that the subsequent installation of electric-powered pumps to run the grinder systems, and the homeowners' "continuing responsibility for the additional expenses they entail[ed], like the professor's ultimate termination in *Ricks*, [were] delayed, but inevitable, consequences of that decision." *Id.* at 1082.

State Senator Rapert's reliance on *Ricks* and *Humphrey* is misplaced. Unlike the college professor in *Ricks* and the homeowners in *Humphrey*, plaintiffs in this case have sufficiently alleged that State Senator Rapert's blocking of them from his Twitter account and Facebook page is a continuing constitutional violation, depriving them of the opportunity to interact with State Senator Rapert and his constituents on State Senator Rapert's social-media accounts. Put differently, plaintiffs' complaint does not focus merely on the effects of earlier decisions; rather, plaintiffs allege that a present violation exists. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (explaining that, in alleging a continuing violation, "[t]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists").

In sum, the Court rejects State Senator Rapert's statute-of-limitations defense because Ms. Fernau and Ms. Shoshone's claims are the type where each day creates "a new or continuing violation of rights." *Montin*, 636 F.3d at 415.[4]

---

[4] Because the Court concludes that the continuing-violation doctrine applies to Ms. Fernau and Ms. Shoshone's § 1983 claims making them timely filed, the Court does not address whether Ms. Fernau and Ms. Shoshone's claims were timely under the discovery rule.

15

### D. American Atheists Has Standing To Sue On Behalf Of Its Individual Members

"Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). A "controversy" in the constitutional sense "must be definite and concrete, touching the legal relations of parties having adverse legal interests," and "be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937) (citations omitted).

The Supreme Court has explained that the "irreducible constitutional minimum" of Article III standing requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Eddings v. City of Hot Springs*, 323 F.3d 596, 602 (8th Cir. 2003) (quoting *Defs. of Wildlife*, 504 U.S. at 560). The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

"'The party invoking federal jurisdiction bears the burden of establishing' standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (quoting *Defs. of Wildlife*, 504 U.S. at 561).

It is undisputed that State Senator Rapert has not blocked or banned American Atheists from any of his social-media accounts (Dkt. No. 1-2, ¶ 16, 144). Thus, American Atheists "has

not established a distinct and palpable injury to it sufficient to create a case or controversy within the meaning of Article III." *Nat'l Fed'n of Blind of Mo. v. Cross*, 184 F.3d 973, 980–81 (8th Cir. 1999). However, "[a]n organization can have standing on its own behalf or on behalf of its members." *ARRM v. Piper*, 367 F. Supp. 3d 944, 953 (D. Minn. 2019) (citing *Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir. 1993)). The Supreme Court has recognized that an organization:

> has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Defs. of Wildlife*, 504 U.S. 555 at 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

State Senator Rapert's sole argument here is that "dismissal of American Atheists is . . . required because the participation of the individual members is required." (Dkt. No. 37, at 23). State Senator Rapert elaborates: "The relief sought by [p]laintiffs include [sic] declaratory judgment, injunctive relief, and 'nominal and punitive damages.'" (*Id.* (quoting Dkt. No. 1-2, at ¶ 5)). Relying on *Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985), in which the Eighth Circuit held that, because the Land Sales Act provides authority for both damages and specific performance remedies, "[a] damages remedy for a Land Sales Act violation would clearly require individualized proof necessitating the individual participation of the Association members," State Senator Rapert contends that plaintiffs' "request for 'nominal and punitive damages' in addition to declaratory and injunctive relief requires the precise knowledge

17

of the injury to each plaintiff or member claimed to be harmed by" State Senator Rapert's conduct (Dkt. No. 1-2, at 23). State Senator Rapert insists that "[t]his required participation defeats American Atheists' claim to representational or associational standing." (Dkt. No. 37, at 23). The Court is unconvinced.

The Court has already found that State Senator Rapert is entitled to qualified immunity on all of plaintiffs' claims and dismissed, without prejudice, plaintiffs' claims for monetary damages against State Senator Rapert in his individual capacity. As a result, the only remedies still being sought are declaratory and injunctive relief, neither of which requires the participation of the individual members of American Atheists. A case cited by State Senator Rapert is instructive. In *Arkansas Medical Society, Inc. v. Reynolds*, 834 F. Supp. 1097 (E.D. Ark. 1992), Medicaid providers and recipients sought an injunction preventing implementation of a 20 percent reduction in reimbursement rates to Medicaid providers of obstetrical and pediatric care, as well as speech, physical, and occupational therapy for children. The Eastern District of Arkansas rejected the state's claim that plaintiffs lacked standing, explaining that it is well-settled law that Medicaid providers and recipients have standing to challenge a state Medicaid plan. *See id.* at 1100. While recognizing that "[t]he more difficult question is whether the medical associations have standing to sue," the court held that, because plaintiffs were not seeking damages on behalf of the individual members, but were instead seeking prospective relief in the form of an injunction, the relief requested did not require the participation of individual members and the medical associations had standing to sue on behalf of their members. *Id.*; *see also Warth*, 422 U.S. at 515 (1975) ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized

standing in associations to represent their members, the relief sought has been of this kind." (citations omitted)).

Accordingly, State Senator Rapert's supplemental motion to dismiss on the ground that American Atheists does not have standing to sue on behalf of its members is denied.

### IV. Conclusion

For the foregoing reasons, the Court grants State Senator Rapert's motion for leave to file a reply brief in support of his supplemental motion to dismiss (Dkt. No. 39) and directs State Senator Rapert to file his reply brief within 14 days from the entry of this Order. The Court grants in part and denies in part State Senator Rapert's supplemental motion to dismiss (Dkt. No. 37). Specifically, the Court grants State Senator Rapert qualified immunity on plaintiffs' free-exercise, equal-protection, and state-law claims to the extent that those claims seek monetary damages against State Senator Rapert in his individual capacity. The Court dismisses plaintiffs' claims for monetary damages against State Senator Rapert in his individual capacity. In all other respects, the Court denies the supplemental motion to dismiss.

It is so ordered this 15th day of December, 2020.

_____
Kristine G. Baker
United States District Judge